WOOD, executor, &c., plaintiff in error, *agt.* WEIANT and others, defendants in error.

### Questions discussed.

1. As to the true *location* (from the evidence) of the northerly boundary line of the Kempe tract of land, and the southerly boundary of the Wolf tract adjoining, situated in the town of Haverstraw, Rockland Co., adjoining the Hudson river.

2. A witness being offered on behalf of the plaintiff, and objected to on the ground of interest, and that interest being established by a witness sworn for that purpose, and the principal witness thereupon being released; whether the circuit judge properly allowed the defendants to impeach the *credibility* of the principal witness by an examination of him (cross-examination) upon the matters previously testified to by the witness called to prove his interest?

3. Whether a deed acknowledged before a commissioner of deeds, in his county, could be read in evidence, (under the *Laws of* 1833, *ch.* 271, § 19,) at the circuit in another county, without the certificate of the clerk of the former county, required by § 18 of the statute, (1 *R. S*, 749, § 18,) "of the proof and recording of deeds?"

The action was by Wood against Weiants, for cutting wood and timber between the lines marked on the map, P. E. and B. G., which the plaintiff claimed was a part of a tract of land called the *Wolf Tract;* he gave in evidence a patent dated Oct. 30th, 1749, to the children of Richard Bradley, for a certain tract, since known as the *Wolf Tract,* together with several other tracts; bounded and described as follows: "Beginning at the southeast corner of the aforesaid Bearhill tract, and on the west side of a small creek, which runs on the west side of a certain meadow called Salisbury's meadow, and is esteemed by some persons to be a part of the manor of Cortlandt, and runs from thence along the line of the said Bearhill tract, north 62°, west 16 ch., then south 25°, west 79 ch., then south 50°, east 43 ch., then north 62°, east 86 ch. to Hudson's river, then up along the said river to the meadow aforesaid, and then by the bounds thereof to the place where this fourth tract begun, containing 500 acres." The plaintiff also gave in evidence a patent granted 18th March, 1769, to William Kempe and others, for a tract of 3,000 acres of land, particularly de-

Wood, executor, *agt.* Weiant and others.

scribed.   It is bounded on the northerly line by the Hudson's river, and then runs westerly along the river as it runs to the said tract of 500 acres, granted to the children of Richard Bradley, then along the bounds thereof, south 62°, west 86 ch., then north 50°, west 43 ch., to a tract of 500 acres granted to Thomas Ellison, and Lawrence Rooner.   It does not appear from the case precisely at what time Joseph F. White became the owner of the easterly half of the Wolf Tract.   Scofield, a witness, says it was about 1811.   In August, 1813, Caldwell being the owner of that part of the Kempe Tract adjoining the Wolf Tract, sold and conveyed his land in the Kempe Tract to White, described thus : " Beginning on the line of the north bound of a tract of 1,000 acres granted to Bradley and Jamison, at a heap of stones, at the east point or corner of a part of the said Kempe Tract, lately set off and deeded to Samuel Brewster, (marked D on the map,) and running from thence along the line of Bradley and Jamison, north 45 , east 106 ch. to the Dunderburgh turnpike road, then westerly along the same as it runs 36 *ch. and* 75 *links to the line of a tract now called the Wolf Tract,* then along the same, south 62°, west 80 ch. to a heap of stones, then north 50°, west 43 ch. to a tract of· 500 acres granted to Thomas Ellison, &c.   In September, 1825, White's land was sold and conveyed by the sheriff of Rockland County, on judgments against him, to Joseph De Forest.

On the 14th of October, 1835, De Forest conveyed to Joseph Moser the same land, (in the Kempe Tract,) which he purchased of White, with the same boundaries and description contained in the deed from Caldwell to White.   This deed was recorded 18th May, 1836.   Moser conveyed the premises to the defendant with the same description.   On the 31st of Oct., 1835, De Forest conveyed the Wolf Tract to the plaintiff, Wood.   The deed was recorded 29th Dec., 1835.

The premises are described thus : " All that certain tract, piece, or parcel of land situated in the town of Haverstraw, in the county of Rockland, and state of New-York, being the easterly half of a certain tract of land of 500 acres, bounded southerly and easterly by the Hudson river, and the land form-

erly purchased by Joseph F. White, of Joshua Caldwell, called the Kempe Tract, westerly by it, and part of the aforesaid 500 acres purchased by William Jaycocks, and northerly, by the land formerly, or now belonging to the heirs of Van Cortlandt, containing 250 acres, be the same more or less."

For the purpose of locating the lands purchased by the plaintiff of De Forest, or to ascertain the easterly and southerly line thereof, it was necessary to ascertain that line of the Wolf Tract, or the northerly line of the Kempe Tract; or the true lines of the land conveyed by Caldwell to White, which is the same thing, as that land was a part of the Kempe patent or tract, and run from point I at the Dunderburgh turnpike road on the map, westerly along the same, *as it runs 36 ch. and 75 links to the line of the Wolf Tract.*

This line, as claimed by the plaintiff, is indicated on the map by P. E. The line, as settled by the verdict of the jury, is indicated on the map by B. G. The line along the turnpike road, if extended the distance called for, would pass the line as claimed by the plaintiff to be the line of the Wolf Tract, more than twelve chains, and more than four chains from the line B. G.

Joseph P. Morgan was offered as a witness on the part of the plaintiff and objected to on the ground of interest. A witness, Lemuel June, was sworn to prove him interested, and his interest being established in the opinion of the circuit judge, it was supposed to be removed by a release, and he was sworn and testified. On his cross examination, the defendants' counsel proposed to examine him as to the same matters, but without specifying the particular facts he wished to elicit. The circuit judge permitted the examination for the purpose of impeaching his credit, but not as to his competency; that being established by the release. Plaintiff excepted.

The plaintiff offered in evidence a deed from Robert Lamoureux and wife, to Jacob Rose, dated May 26, 1836, and in due form of law acknowledged before a commissioner for, and in the county of Orange, on the 27th May, 1836. The counsel for the defendants objected, on the ground that the deed was

not entitled to be recorded, for want of a certificate in due form of law of the clerk of the county of Orange. The counsel for the plaintiff insisted that the certificate of acknowledgment without any clerk's certificate was sufficient to entitle the deed to be read in evidence, under the statute of 1833. The circuit judge decided that the deed was inadmissible as evidence, without such clerk's certificate. The plaintiff excepted.

The plaintiff gave evidence, showing that one Parmenter run a line between the Wolf and Kempe tracts a few years before the trial, beginning at the Split rock on the Hudson river in the line P. E. marked on the map, and run on that line within a chain or a chain and a half of point P. and made a monument. The plaintiff's counsel then proposed to prove, (Parmenter being dead,) that Parmenter, when he made that monument or corner, *stated,* as a reason for not running quite to the *Harrow* monument, that there was so much dispute about the line that he would not run further, so as to be certain of being within bounds. This evidence was objected to, and rejected by the circuit judge. The plaintiff excepted. There were some other exceptions to evidence taken by the plaintiff, which will appear in the opinion of Judge JEWETT.

The circuit judge, Hon. CHARLES H. RUGGLES, in his charge to the jury, after adverting to the facts of the case applicable to this question, laid down the following principles: " That courses and distances given in deeds must yield to certain fixed and known monuments—that where the boundaries or division lines between the land of different owners have been located by fencing or other visible and certain marks, clearly intending to designate such lines, and acquiesced in for twenty years, such location would be conclusive upon the parties; but such was not the case between these parties; the premises in question are wild, mountain, unenclosed and uncultivated lands, and the parties have resorted to the declarations of former owners as to the boundaries, which, although admissible evidence against those who claim under them, are often unsatisfactory; they may sometimes be founded in mistake, and if the mistake be apparent, the parties are not bound, that there is more or less

Wood, executor, *agt.* Weiant and others.

danger in trusting to these declarations, because they are liable to be misunderstood and misrepresented; they should be clearly proved and established before they are entitled to a controlling influence with a jury."

The circuit judge then stated to the jury, in substance, that the evidence, excepting that which arose out of the deeds, seemed to favor the location as claimed by the plaintiff, but that the deeds afforded strong evidence against the plaintiff and in favor of the defendants.

After the charge of the circuit judge, the plaintiff's counsel excepted as follows: "And the counsel for the plaintiff then and there duly excepted to the said charge and each and every part thereof."

The jury found the defendants not guilty of the trespasses, &c. And judgment was entered for the defendants.

A bill of exceptions was made by the plaintiff, and argued before the circuit judge for a new trial, which was denied, and a written opinion given.

The plaintiff then carried the case to the supreme court, where the motion for a new trial on the bill of exceptions was argued and denied.

BRONSON, Justice, delivered the following opinion: "If there had been a known and acknowledged ground line between the Wolf and Kempe Tracts, that would have controlled the chaining along the Dunderburgh turnpike. But I do not see that there was any such line between the two tracts; and it is doubtful upon the evidence where the line should run. De Forest was the owner of both tracts at the time he conveyed to Moser, under whom the defendant claims; in such a case, there is nothing to control the length of line given in the deed. On this and the other questions made by the plaintiff, we are satisfied with the opinion of the circuit judge, a copy of which has been laid before us; and this renders it unnecessary to discuss the question more at large."

The plaintiff brought a writ of error, and came to this court.

*H. S. Dodge, Attorney and Counsel* for plaintiff in error.

The supreme court erred in not awarding a new trial upon

the bill of exceptions, as well upon the exceptions to the charge of the circuit judge, as to his decisions upon the admission and rejection of evidence.

*First.* The judge's charge was erroneous, and he ought instead to have charged the jury in the words of the opinion of the supreme court, (p. 84,) That "if there was a known and acknowledged ground line between the Wolf and Kempe Tracts, that would control the chaining along the Dunderburgh Turnpike," and the deeds would not estop or prejudice the plaintiff; and that if they were of his opinion that the weight of the evidence independent of the deeds was in favor of the plaintiff's location, then that the plaintiff was entitled to recover.

*Second.* The instructions to the jury as to the construction and effect of the deeds, (*p.* 69, *fol.* 269–274,) are entirely erroneous as well in their assumptions of fact as in point of law.

1. As to the facts.    The deed from De Forest to plaintiff was recorded December 29th, 1835, (*p.* 11, *fol.* 30,) while the deed to Moser, under which defendants claim, was not recorded until May 18, 1836, five months later, (*p.* 21, *fol.* 72.)    The plaintiff's title is therefore *prior*.

2. The chaining in De Forest's deed to Moser and in Caldwell's deed to White, does not coincide *substantially*, (*Charge, fol.* 270,) nor *exactly*, (*Ib., fol.* 273, 4,) with the Gurnee and Parmenter line B. G.    On the contrary, defendants' own surveyors never so pretended, but prove that the 36 ch. 75 links along the turnpike, strikes K at the foot of the green line, (*p.* 33, *fol.* 114, also, *fol.* 128, 129, 144, 146,) although no allowances were made, (*fol.* 135.)    Abraham Gurnee, one of defendants' surveyors, ran the 36.75 chains far beyond the green line, (*p.* 43, *fol.* 162–165.)

The green line is four chains from B. G. and twelve chains from P. E. (*V. Gurnee's testimony, p.* 35, *fol.* 124, 125, *and fol.* 130, 146, *and the map which was made by him, page* 34.)

3. The circuit judge acknowledges these errors in his opinion on the motion for a new trial before him, (*pp.* 80, 81.)    His answer, (*p.* 80,) does not meet the objections : because, First, the question being one of title, the plaintiff's elder title cannot be harmed by the subsequent grant to Moser, and De For-

est's acts after the recording of the grant to the plaintiff are not the acts of plaintiff's predecessor; and, secondly, plaintiff's deed does not refer to Caldwell's *deed* to White, but merely to the fact of the purchase. (*V. Van Wyck* v. *Wright*, 18 *Wend. p.* 165.)

And the evidence also shows that the circuit judge is entirely wrong in assuming, (*p.* 76,) that White owned the Wolf Tract when he bought of Caldwell. (*V. fol.* 31, 174, 218, 225, 236, 239, 240, 241.)

4. The Ellison corner was a point undisputed and agreed on by both parties. It was also proved beyond question by the witness who saw it made, (*p.* 52, *fol.* 200.) The two courses and distances from this corner to the turnpike are the same in both plaintiff and defendants' deeds. And the defendants' own evidence, (*see sub.* 2 *of this point*,) admits that it is impossible to get to the Ellison corner with those courses and distances without shortening the 36.75 chains along the turnpike at least four chains. So that the circuit judge is entirely wrong in supposing (*Charge, fol.* 273, *Opinion, p.* 79,) that there is no evidence of mistake in that distance, or that it furnishes strong or any evidence of the true position of the line.

5. The circuit judge also erred in charging, in substance, (*pp.* 68, 69, *fol.* 267,) that there was no evidence of fixed and known monuments to control the distance given in the deed, and that the parol evidence was of declarations to show an actual location for more than twenty years, and was to be distrusted. And he repeats this error in his opinion, (*pp.* 77, 78.)

The defendants' deeds not only call for "the line of the Wolf Tract," at the end of the 36.75 chains along the turnpike, but then proceed "along that line" in the exact course of the original Wolf patent, "to a heap of stones," then to the "Ellison Tract;" thus calling for three monuments: 1. "The line of the Wolf Tract;" 2. The heap of stones in that line at the corner; 3. The Ellison corner.

The plaintiff's evidence was directed entirely to showing where *those monuments in fact were,* and not at all to proving a practical *location* differing from the deed.

That the "line of the Wolf Tract" is a fixed monument

within the rule, so as to control the chaining, even though the land be wood and wild, and means the line actually marked and run ; and that if its situation be disputed, or the trees or other monuments are gone, it must be submitted to the jury on the evidence to find where it was at the date of the deed, and when found by them, will control the chaining as if the monuments still existed, or there was no dispute as to their situation, is established in the following cases. (*Pernam* v. *Weed,* 6 *Mass. R.* 131; *Jackson* v. *Camp,* 1 *Cowen,* 612; *Doe* v. *Thompson,* 5 *Cowen,* 378; *Jackson* v. *Widger,* 7 *Cowen,* 724; *Jackson* v. *Britton,* 4 *Wend.* 507 ; *Wendell* v. *The People,* 8 *Wend.* 183, *in this court ; vide S. C. below,* 5 *Wend.* 146; *Rich* v. *Rich,* 16 *Wend.* 643; *Van Wyck* v. *Wright,* 18 *Wend.* 157, *in this court ; Clark* v. *Wethey,* 19 *Wend.* 320 ; *Barclay* v. *Howell's Lessee,* 6 *Peters,* 499 ; 2 *Cowen and Hill's Notes,* 1378–9, 1400. *Opinion of the Supreme Court, p.* 84; 4 *P.* 209; 2 *Story's R.* 278; 5 *H. and John.* 163 ; 13 *Pick.* 145 ; 5 *Metc.* 223.)

That the fact of the chaining being at least four chains too much, is of itself sufficient evidence of a mistake to call for its rejection altogether. (*Vide Jackson* v. *Carey,* 2 *J. C.* 350.)

*Third.* The plaintiff at the trial furnished evidence, certainly sufficient to be left to the jury, to prove,—First, that the line E. P. was the "line of the Wolf Tract," mentioned in the deed from Caldwell to White ; second, that at the corner P, was the "heap of stones" mentioned in the deed ; third, that the 43 chain line from the Ellison corner, when properly run, reached beyond the point B, and to the corner P, and the circuit judge ought to have instructed the jury that, if they found for the plaintiff on these points, he was entitled to recover.

The supreme court, in their opinion, (*p.* 84,) usurp the province of the jury in assuming against the plaintiff on the facts, especially as the circuit judge admitted the weight of evidence to be with the plaintiff. (*Charge, fol.* 269.)

*Fourth.* The circuit judge erred in allowing the defendants to attack the credibility of the witness Morgan, by examining him as to the same matters previously testified to by the witness, Lemuel June, (*pp.* 15, 17, *fol.* 49, 50.)

They were concluded by their resort to proof aliunde, and

the examination allowed went merely to show interest after it had been released. (*Chance* v. *Hine*, 6 *Conn. R.* 231; 1 *Cowen & Hill's Notes*, p. 259; 1 *Chit. R.* 372, *and note a; Butler* v. *Butler*, 3 *Day*, 214; *Stebbins* v. *Sacket*, 5 *Conn.* 258.)

*Fifth.* The deed offered by the plaintiff, (*p.* 47, *fol.* 175–177,) was improperly excluded; it was admissible under the act of 1833, ch. 271. (2 *R. S.* 325, § 74, 2*d* ed.)

*Sixth.* The evidence offered by the plaintiff at *p.* 53, *fol.* 202, was improperly excluded. It was an offer to prove a *general reputation* as to boundary, and not a *particular fact* merely, and therefore admissible. (*Ellicott* v. *Pearl*, 10 *Peters*, *p.* 436; *Boardman* v. *Reed's Lessee*, 6 *Peters*, 328; *Conn.* v. *Penn.* 1 *Peters' C. C. R.* 496; 1 *Bing. N. C.* 430.)

*Seventh.* The evidence offered by the plaintiff at *p.* 56, *fol.* 214, was improperly excluded. And vide as to this witness, (*p.* 60, *fol.* 231, 232.) The hearsay offered was not only of the survey, but *generally of the line and monuments.* (*Vide in addition to the above cases,* 1 *Cowen & Hill's Notes*, *pp.* 634–6, *and the cases there cited;* 12 *Pick.* 532; 5 *Metc.* 223.)

*Eighth.* The evidence offered by the plaintiff at p. 56, *fol.* 215, of Col. Marvin's declarations after the survey, was improperly excluded, as well for the reasons stated on the preceding points, as on the ground that he was agent to both parties in making the survey, (*pp.* 29, 30.) (*Mott.* v. *Kip*, 10 *J. R.* 478; *McCormick* v. *Barnum*, 10 *Wend.* 104.)

*Ninth.* The evidence offered by the plaintiff at *p.* 64, *fols.* 244, 248, was improperly excluded. It was a part of the *res gestæ*, an important part of the surveyor's act, and necessary to be shown in order to rebut the inference that might be drawn from his act of stopping, if left unexplained. (*Barclay* v. *Howell's Lessee*, 6 *Peters*, 504; *United States* v. *Brig Burdett*, 9 *Peters*, 689; *Westcott* v. *Bradford*, 4 *Wash. C. C. R.* 500; *United States* v. *Craig*, 4 *Wash. C. C. R.* 729; *Walters* v. *Lewis*, 7 *Car. & P.* 344; *Crane* v. *Nicoll*, 1 *Bing. N. C.* 430; 1 *Cowen & Hill's Notes*, 592, *et seq.; Burnet* v. *Burch*, 1 *Denio*, 141; *Rice* v. *Churchill*, 2 *Denio*, 145; 4 *C.* 423.)

The judgment of the supreme court ought to be reversed, and a *venire de novo* awarded.

Wood, executor, *agt.* Weiant and others.

☞ If reverse, reverse absolutely—not *venire de novo*—plaintiff died after verdict, and before judgment, (*fol.* 281,) and costs will follow. (17 *W.* 208.) ☜

H. S. DODGE, *Attorney, and of Counsel for plaintiff.*

☞ (REPLY.) County clerk has no authority to certify except where to be recorded—[may certify *all* acknowledged deeds—clerk don't inquire whether party is going to have it recorded, or not.] ☜

*Wm. Nelson, Attorney, and*
*A. Taber, Counsel* for defendants in error.

The sole question in this cause on the trial was one, not of title, but *of boundary.* It was a controversy as to the true *location* of the northerly boundary of the Kempe tract, which was the southerly boundary of the Wolf tract; the plaintiff claiming to own in the latter, and one of the defendants in the former contiguous portions of land. The patent for the Wolf tract was granted in 1749, and that for the Kempe tract in 1769; but neither patent refers to any tangible or visible monument or boundary which affords any clue to the disputed line, and neither the plaintiff nor defendants connect themselves with either patent, but rely upon titles long subsequent, originally acquired probably from squatters. The plaintiff's title deeds bound him, (upon the disputed line,) on the Kempe tract, (*fol.* 31,) without giving any visible boundary. The defendants' title, which is the older one, from a common source, (*fol.* 67, *&c.*) gives a visible and acknowledged starting point, bounds the land on one of its lines on the *Dunderburgh Turnpike*, and from thence gives courses and distances, which correspond with the green line as the one in dispute; all the *distances* in defendants' deed being accurate and consistent, and all the *courses* being also consistent, *except that upon the westerly end of the green line*, which requires a variance of 7° degrees to clear; but which runs over a portion of the mountain, where, from metalic or some other attraction, the *needle varies some* 15 *or* 20 *degrees.* (*See fol.* 115, 141, 164, 180, *&c.*) And from the evidence afforded by the face of these deeds, the surveys, and

a mass of oral testimony relating to monuments and marked trees, and the previous amicable settlement of this boundary line between the respective occupants of the lots, the jury have found the line in question as claimed by the defendants. And their *finding upon this disputed question of fact*, we trust will neither be disturbed nor reviewed by this court. We submit:—

*First.* That there is no ground for reversing the judgment in this cause arising from the decisions of the circuit judge in admitting or rejecting evidence on the trial.

The exceptions of plaintiff's counsel at fol. 49, 73, (*see fol.* 89,) 78, 177, 203, 214, 215, 248, are sufficiently answered by the opinion of the circuit judge at pages 81–84. (*L.* 1833, *p.* 390; 1 *C. & H.* 631, 724, 729.)

*Second.* The correctness or incorrectness of these decisions of the circuit judge is rendered immaterial, by reason of the plaintiff being *estopped from denying that the green line is the true division line* upon the *locus in quo*.

1. *By the deeds* under which the defendant claims from a common source of title and prior in date to that under which the plaintiff claims; the defendants' deeds giving a *visible and admitted starting point*, referring to the *Dunderburgh Turnpike*, a *known location*, and thence giving *courses and distances which correspond with the green line on the map ;* and by the plaintiff's paper title which *bounds him on the line thus defined.* (*See fol.* 67–72, *fol.* 31, *and pages* 76–8.)

2. The plaintiff is also estopped from claiming that the *locus in quo* is within the Wolf tract, first, by the amicable settlement and practical location of the line in 1810, between Libbeus Scofield, under whom the plaintiff claims, and Joshua Caldwell, who then owned the respective lots; and secondly, by the arbitrament and settlement of the line in question between Morgan and the defendant, George Weiant in 1838. (*See fol.* 98, 104, 128, 129.)

Morgan, at the time of this latter settlement, was the owner of a conditional fee in equity in the land claimed by plaintiff. (*Fol.* 34, 35; 2 *R. S.* 135, § 10.)

Or Morgan was at this time, not the tenant, but the *agent of*

Wood, executor, *agt.* Weiant and others.

*the plaintiff* in regard to this land, and his agreement as to the boundaries was conclusive on the plaintiff.

3. If the plaintiff, by either of these means, is estopped from claiming south of the green line, then no decision of the circuit judge in admitting or rejecting oral evidence of such claim can be the ground of a new trial. (*See* 21 *Wend. Rep.* 360—*Comyn on Landlord and Tenant,* 18, *note q. ;* 2 *Smith's Leading cases,* 436, 459, 460; 1 *D.* 226.)

*Third.* The counsel for the plaintiff endeavored to bring into review in the supreme court the whole evidence in the cause, and the comments upon it of the circuit judge to the jury. The verdict in this cause was well warranted by the testimony. But were it otherwise, a verdict will not be set aside on a bill of exceptions and writ of error, *as against evidence,* no matter how palpably so ; nor *for any comments by the judge upon mere matters of evidence or the weight of evidence,* no matter how erroneous. (2 *Chit. Gen. Prac.* 593 ; *Lucus* v. *Nockells, cited* 1 *Adol. and Ellis,* 15; *The People* v. *Haynes,* 14 *Wend. Rep.* 554; *Carver* v. *Jackson,* 4 *Peters Rep.* 80, 81 ; *Ex parte Crane,* 5 *Peters' Rep.* 199; *Bacon's Abridg., title,* "*Bill of Exceptions,*" 1 *D.* 571; 2 *H.* 205; *C. and H.* 787, 788.)

*Fourth.* The *exception* to the judge's charge at fol. 274 *is too vague and general to raise any particular legal question.* It is taken to the whole charge, including comments upon the evidence. It is rendered no more specific by adding to the general exception to the charge, the words "and each and every part thereof." It failed to call the attention of the circuit judge or defendants' counsel to *any particular point,* on which the plaintiff's counsel claim to have been overruled. (*Ex parte Crane,* 5 *Peters' Rep.* 191, 198, 199 ; *Camden and Amboy R. R. Co.* v. *Belknap,* 21 *Wend.* 354, 359, 360 ; *Graham* v. *Cammam,* 2 *Caine's Rep.* 168 ; *Ball* v. *Mannini,* 3 *Bligh's Rep. N. S.* 22 ; *Riab* v. *M'Alister,* 8 *Wend. Rep.* 109, 111, 112.)

*Fifth.* The only portion of the judge's charge which lays down *any principle of law* is at fol. 267, and is unquestionably *correct, and favorable to the plaintiff.* The residue of the charge consists of comments upon the evidence and the weight that should be given to it, which the jury were at perfect liberty to

disregard, and which we have seen is not the subject of a legal exception. (4 *Peters' Rep.* 80, 81, *and cases cited under* 3d *and* 4th *points.*)

*Sixth.* The judgment in this cause should be affirmed with double costs. (2 *R. S.* 618, §§ 32, 33.)

> Wm. Nelson, *Attorney for defendant in error.*
> A. Taber, *of Counsel.*

Jewett, Ch. J. The rule that courses and distances yield to natural and ascertained objects is well settled, and I do not know that it is disputed here. If there had been a known ground line between the Wolf and Kempe Tracts, that would have controlled the distance or chaining along the Dunderburgh Turnpike road called for by the defendants' deed. The circuit judge in charging the jury stated that upon a view of all the evidence, excepting that which arose out of the deeds, he was of opinion that the weight of it was in favor of the plaintiff's location, that is, as I understand it, that the line of the Wolf tract is where the line is drawn on the map from point P to point E.; but that the deeds afforded strong evidence against the plaintiff and in favor of the defendants. That is, that the fact that the chaining or distance along the turnpike road from point I on the map carried the line to the foot of the green line marked on the map, or beyond that point.

The judge instructed the jury that the description in the deed from De Forest to Moser, running 36 chains and 75 links along the Dunderburgh Turnpike road to the Wolf Tract, if not conclusive against De Forest, and those claiming under him, that the southerly line of the Wolf Tract was that distance from where the line north 45° east, mentioned in the deed, intersects the turnpike, (point I on the map,) was at least a strong recognition, under hand and seal, of the correctness of De Forest's description of the Kempe Tract, in his deed to Moser, and therefore, of the accuracy of the Gurnee and Parmenter line which crosses that turnpike at the end of 36 chains and 75 links, running from where the course north 45°, mentioned in the deed, intersects the turnpike.

The plaintiff's counsel excepted. I am inclined to think

that too much importance was given to the distance of 36 chains and 75 links called for by the deeds under which the defendant holds his title ; I think it should have been submitted to the jury to find from the evidence where the line between the Wolf and Kempe Tracts was, and in doing that, it would have been entirely proper to have instructed them, if there was any doubt as to its location from the evidence, and of that which the course and distances described in the deeds indicated, that then it would be proper for them to look to that in connection with the other evidence, but that if they could ascertain from the evidence the location of that line, although the distance from point I at the turnpike road to the line of the two tracts fell short of 36 chains and 75 links, that must yield to the line thus found and ascertained.

After a careful examination of the evidence aside of that furnished by the course and distance, alluded to, contained in the deeds, I entirely agree with the judge at the circuit that the weight of it was in favor of the plaintiff's location.

And although I think the facts in the case did not warrant so strong an expression of opinion, as to the controlling effect of the deeds, yet I am of opinion that the exception to the charge does not raise any legal question ; nothing, as I can see, was said by the judge beyond commenting upon mere matters of evidence or the weight of it, and even to that the attention of the judge was not directed by the exception.

I am satisfied that there is no error in the decision of the circuit judge in allowing the defendant to give evidence of the interest of the witness Morgan, in the event of the suit, to affect his credit, nor in rejecting the deed offered in evidence on the ground it had been acknowledged in another county before a commissioner of deeds, on the ground that there was no certificate required by the statute. (1 *R. S.* 749, § 18.)

The plaintiff's counsel offered to prove that for thirty or forty years past, it had always been reported and understood in the neighborhood, that a monument in the shape of a Harrow marked a corner between the Kempe and Wolf Tracts. It was objected to, overruled, and an exception taken. The judge stated that he would allow witnesses who had seen the monu-

ment to give evidence that such monument identically was known and reputed as one of the boundaries.

I am of opinion that the judge correctly shut out the proposed evidence. The *existence* of the monument could not be thus proved, consistent with any rule of evidence. It was merely hearsay, and not within any exception to the rule, that such evidence is inadmissible. (1 *Green. Ev.* § 145, *n.* 1.)

It is next objected that the judge at the circuit decided erroneously, in rejecting the evidence offered to show what Harmanus Hans, who was a chain-bearer in an old survey, made upward of thirty years before the trial, of the line between the *Wolf and Kempe Tracts*, then dead, told the witness before any controversies arose about the boundary line, respecting that survey and the boundary line, and the monument, and marks upon it.

It will be observed that it was not proposed to show the declaration of Hans made at the *time* the act was done, which they were supposed to characterize, but upon other subsequent occasions. It may be, that declarations by a chain-bearer, who is deceased, in making a survey of a line, made, at the time the act was done, in regard to the line run, and monuments reached, &c., would be admissible to prove the facts as part of the *res gestæ*. But the evidence offered in this case was mere hearsay, and not within any of the few exceptions to the rule which excludes such evidence as proof of a fact affecting a party in a court of justice, and, I think, was properly excluded.

Upon the same ground I think the evidence offered of the declarations of Morgan, the surveyor, were rightly excluded. It was said on the argument that he was the agent of the parties in making that survey, and that was urged as an additional ground for the admission of his declarations. But of that there is no evidence in the case. The evidence on that point is, that he was not, but was in the employ of the state. Be that as it may, the declarations proposed to be proved were made subsequent to the making of the survey, and were no part of the *res gestæ ;* and admitting he had been the agent of the parties in making the survey, he could not affect the interests of either,

Wood, executor, *agt.* Weiant and others.

by any subsequent declarations.    Declarations of an agent must be confined to such statements as are made by him either at the time of the act done by him as such, about which he was employed or acting within the scope of his authority.

Evidence was given showing that Parmenter run a line between the Wolf and Kempe Tracts a few years before the trial, beginning at the split rock on the Hudson river in the line P. E., marked on the map, and run on that line within a chain or a chain and a half of point P. and made a monument.    The plaintiff's counsel then proposed to prove, (Parmenter being dead,) that Parmenter when he made that monument or corner, *stated*, as a reason for not running quite to the *Harrow* monument, that there was so much dispute about the line, that he would not run further, so as to be certain of being within bounds.    The evidence was objected to and rejected, to which there was an exception.

Although the evidence offered was hearsay, yet it constituted a part of the transaction which was the subject of inquiry. The act of Parmenter in stopping short of the *Harrow* monument, unexplained, would be more or less strong, to show, that the line run by him was not the true line between the two tracts, as it did not reach the monument called for.    It was, therefore, material to show some reason, if it existed, why Parmenter did stop short of that monument, consistent with the principal fact, that his line, if run, would reach it ; therefore I think to show the nature of Parmenter's act in stopping short of it, or his motives in so doing, proof of what he said at the time of doing it, was admissible evidence for the pur pose of showing its true character.    (*Cow. and Hill's Notes to Phillip's Ev.* 1 *part.* 585, *note* 444 ; 1 *Green. Ev.* § 108, *n.* 2.) On this ground, I think the judgment of the supreme court should be reversed, and a *venire de novo* be awarded.

GARDINER, J.    One Parmenter was employed to run the line between the Kempe and Wolf Tracts, some two years before the trial ; by whom does not very satisfactorily appear, but probably by Morgan, who was in possession, under Wood, the plaintiff below, under a contract for the purchase of the premises in question or some part thereof.    A map made by Par-

Wood, executor, *agt.* Weiant and others.

menter was used upon the trial. It appears that this surveyor in running the said line, stopped one or two chains short of the *Harrow* monument, a terminus which was in the same line, and which the plaintiff attempted to show was an original monument. Parmenter established a new monument at the place where he stopped. He died some time before the trial. One Morgan was called as a witness, and the plaintiff proposed to show by him, " that Parmenter *when* he made his corner stated as a reason for not running quite to the *Harrow* monument, that there was so much dispute about the line that he would not run further, so as to be sure that he was within bounds." This was objected to, and overruled by the circuit judge, and the plaintiff excepted.

The establishment of the monument was a part of the duty of the surveyor. The reasons for the act given at the time of its performance, and in explanation of it, were a part of the *res gestæ*, and competent evidence. A pile of stones of themselves indicate nothing. Whether they were designed to denote a corner, or the course of a line, or were put together for the purpose of marking the spot from which the survey was afterward to be continued, can in the nature of things be learned only from the declarations of those engaged in the survey. A line mark upon a tree, the map itself which was produced in evidence at the trial without objection, are merely declarations and explanations of the survey. And it follows that if Parmenter was authorized to establish a monument at all, that authority included the right to declare the purpose for which it was established. This was in effect the proposition of the plaintiff. He proposed to show that the surveyor, when he fixed the monument, placed it in a particular spot, not because he had run the distance called for by the deed, or because his survey led him to suppose that it was the corner of the land as originally surveyed, but from an avowed intention to avoid all controversy thereafter by stopping short of the true corner of the tract. In Barclay *v.* Howell, (6 *Peters*, 504,) one Wood was employed to fix upon the plan of the town of Pittsburgh, and to survey it. His declaration that a particular street should be left open to the river's edge, for the use of the town, was

held admissible as a part of the *res gestæ*, as explanation of the act done. The principle is the same, whether the declaration relates to a street or monument. It is true that the evidence of the survey of Parmenter was offered by the plaintiff; no question, however, was made as to its competency at the trial, and of course cannot be entertained here. We must assume that it was properly admitted, and the declaration of Parmenter should have been received as a part of the survey. (United States *v.* Brig Burdett, 9 *Peters*, 689; 2 *Denio*, 141.)

DECISION.—Judgment affirmed.

BRONSON, RUGGLES, JONES, & JOHNSON, Judges, were for affirmance generally.

JEWETT, Ch. J., GARDINER, WRIGHT, & GRAY, Judges, were for reversal, upon the ground stated in the opinions of Judges JEWETT and GARDINER.

NOTE. The court affirmed the judgment in this case with an expression of approval of the opinion of the circuit judge upon one point only, to wit: that the law of 1833, ch. 271, § 19, had not changed the statute, (2 *R. S.* 325, § 74,) in relation to the reading of deeds in evidence; that the county clerk's certificate was still necessary.

*Reported* 1 *Comstock,* 77.

NOTE. JEWETT, J., arrives at the following results: That although the facts in the case did not warrant so strong an expression of opinion, in the charge of the circuit judge, as to the controlling effect of the deeds, yet, that the *exception* to the charge did not raise any *legal question*.

There was no error in allowing the defendant to give evidence of the interest of the witness Morgan in the event of the suit, to affect his *credit*.

Nor in rejecting the *deed* offered in evidence, on the ground, that it had been acknowledged in another county, before a commissioner of deeds, and that there was no *certificate* required by the statute.

That the *existence* of a *monument*, making a boundary between lands, could not be proved by *general reputation*.

That the *declarations* of a chain-bearer, (now dead,) in running a boundary line, made not at the *time* of the running of the line, but *afterward*, is not a part of the *res gestæ*, and are inadmissible as evidence

It is otherwise, where such declarations are offered to be proved as made *at the time of the survey*.

And on the same principle, the declarations of a *surveyor*, made *subsequent* to the survey, are inadmissible as evidence to show a boundary line or monument, although he is claimed to have been the *agent* of both parties

Because, the declarations of an agent must be confined to such statements as

Bank of Salina *agt.* Henry and Pierce.

are made by him, either at the time of the act done by him as such, or acting within the scope of his authority.

But the *declarations* of a *surveyor,* (now dead,) made *at the time he made the survey,* giving certain reasons for stopping the course and distance where he did, &c., is *competent evidence.* It is a part of the *res gestæ.*

GARDINER, J., discusses but one point in his opinion, and arrives at the same conclusion thereon as Judge JEWETT, to wit: That if a surveyor was authorized to establish a monument at all, that authority included the right to *declare the purpose* for which it was established. And the plaintiff had a right to show such declarations as a part of the *res gestæ.*